UNIVERSAL CARLOADING & DISTRIBUTING COMPANY, Inc., v. PEDRICK (BROTHERHOOD OF RAILWAY & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS & STATION EMPLOYEES et al. Interveners).

No. 230, Docket 21653.

United States Court of Appeals Second Circuit.

Argued May 10, 1950.

Decided June 26, 1950.

Writ of Certiorari Denied Dec. 11, 1950.

See 71 S.Ct. 280.

Webster, Sheffield & Horan, attorneys for appellant; Francis H. Horan, R. J. Leibenderfer, Herbert J. Patrick, Indianapolis,

Ind., C. Whitney Dall, Jr., and Carolinda Waters, all of New York City, of counsel.

Irving H. Saypol, United States Attorney, New York City, for defendant-appellee; Henry L. Glenn, Assistant United States Attorney, New York City, of counsel.

Mulholland, Robie & Hickey, Washington, D. C., attorneys for intervening defendants-appellees; Harold Stern, New York City, Clarence M. Mulholland, Toledo, Ohio, James L. Crawford, Cincinnati, Ohio, and Edward J. Hickey, Jr., Washington, D. C., of counsel.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Universal Carloading & Distributing Company, Inc., hereafter called Universal, is a Delaware corporation engaged in the business of freight forwarding as now defined in Part IV of the Interstate Commerce Act, 49 U.S.C.A. § 1001 et seq. For the period from July 1, 1939 to December 31, 1946 taxes were collected from Universal under the Carriers Taxing Act of 1937.[1] It contended that it was properly taxable under the Federal Insurance Contributions Act, and filed claims for refund of the amounts by which the taxes collected under the first named Act exceeded the taxes payable under the latter Act.[2] Such claims having been rejected, Universal brought the present actions against the Collector of Internal Revenue. After his death his administratrix was substituted as defendant. A labor union and two of its officers were allowed to intervene as defendants.[3] The actions were consolidated and tried before Judge Leibell without a jury. From a judgment dismissing the complaints on the merits the plaintiff has appealed.

This appeal presents the question whether the appellant was taxable under the Railroad Retirement Tax Act rather than under the Federal Insurance Contributions Act. Decision turns on whether Universal is an "employer" as defined in 26 U.S.C.A. § 1532 (a), printed below.[4] This in turn raises two subsidiary questions: (1) whether Universal was controlled by New York Central Railroad Company, and (2) whether Universal performed "any service" of the kind described in the statutory definition. The parties have treated these two questions in inverse order, as did the district judge in his opinion.

Judge Leibell has written so complete and thorough an opinion, supporting his conclusions with reasoning so convincing, that little can be said which is not repetitious. However, the appellants have argued for reversal with such earnestness and at such length that some discussion by us seems desirable.

Three cognate statutes enacted for the benefit of railroad employees contain an identical definition of "employer"[5] and sub-

---

[1]. 50 Stat. 437. This Act was incorporated in the Internal Revenue Code, 26 U.S.C.A. §§ 1500–1538, and since 1946 has been called the "Railroad Retirement Tax Act." It will hereafter be referred to by that name.

[2]. 26 U.S.C.A. §§ 1400–1432. Prior to August 10, 1939 this Act was known as the Social Security Act, Title VIII, 42 U.S.C.A. § 1001 et seq.

[3]. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees; George M. Harrison, President of said Brotherhood; and Carl Bier, Chairman of said Brotherhood on the Property of Universal Carloading & Distributing Company, Inc.

[4]. "§ 1532. Definitions
"As used in this subchapter—
"(a) Employer. The term 'employer' means any carrier (as defined in subsection (h) of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad, * * * "

[5]. Railroad Retirement Act, 45 U.S.C.A. § 228a; Railroad Unemployment Insurance Act, 45 U.S.C.A. § 351(a); Railroad Retirement Tax Act, 26 U.S.C.A. § 1532(a), quoted in note 4 supra.

ject the employer to their respective provisions. Obviously the identical definition in these related Acts should be identically construed and applied. See Despatch Shops v. Railroad Retirement Board, 2 Cir., 154 F.2d 417, 418. The definition of "employer" in the Railroad Retirement Act and the Railroad Unemployment Insurance Act came before the Supreme Court in Railroad Retirement Board v. Duquesne Warehouse Company, 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192. That case involved a railroad-controlled warehouse company which loaded and unloaded for shippers carload freight transported by a railroad whose applicable tariff required the shipper to perform such services. The Supreme Court said that the question is "whether a carrier's affiliate is performing a service that could be performed by the carrier and charged for under the line-haul tariffs", 326 U.S. at page 454, 66 S.Ct. at page 242; it held that the loading and unloading services performed by Duquesne are services performed "'in connection with the transportation of * * * property by railroad'" and therefore are within the coverage of the statutory definition. Assuming for the moment that Universal was railroad-controlled, we think, as did Judge Leibell, that the Duquesne case leads inescapably to the conclusion that the services performed by Universal are within the coverage of the Railroad Retirement Tax Act. Indeed, the case is stronger than Duquesne's for in addition to loading and unloading Universal performs many other services which could be performed by railroads in connection with the transportation of property and for which the railroad could make a charge.[6] Universal has presented an elaborate and lengthy argument to prove that the legislative history of the Tax Act reveals that it was never intended to apply to freight forwarders, whether railroad controlled or independently owned. We do not find the legislative history persuasive of such intent, but in any event the fact that a similar argument did not prevail in the Duquesne

case would preclude its acceptance in the case at bar.

In Universal Carloading & Distributing Co. v. Railroad Retirement Board, 84 U.S. App.D.C. 188, 172 F.2d 22, the question was presented whether the present appellant came within the definition of "employer" in the Railroad Unemployment Insurance Act. The Court of Appeals held, in reliance on the Duquesne case, that the type of services performed by Universal brought it within the coverage of the statutory definition. We agree with that conclusion.

The Court of Appeals discussed at length the question of the control of Universal by New York Central and held that the pre-existing control was not ended by the Trust Indenture of June 15, 1939. Judge Leibell also discussed this question, independently reached the same conclusion, and followed the decision of the Court of Appeals on the principle of *stare decisis*. We agree with his discussion and have nothing to add.

Judgment affirmed.

---

6. Judge Leibell made detailed findings of fact which need not be here repeated. An adequate description of Universal's operations may be found in Universal Carloading & Distributing Co. v. Railroad Retirement Board, 84 U.S.App.D.C. 188, 172 F.2d 22.