**LATSKO v. NATIONAL CARLOADING CORP. et al.**

**ERIE R. CO. v. LATSKO.**

Nos. 11272, 11273.

United States Court of Appeals Sixth Circuit.

Nov. 28, 1951.

N. D. Davis, Cleveland, Ohio (N. D. Davis and Davis, Davis & Handelman, Cleveland, Ohio, on the brief), for Mike Latsko.

Robert M. Weh, Cleveland, Ohio (Robert M. Weh and Burgess, Fulton & Fullmer, Cleveland, Ohio, on the brief), for National Carloading Corp. and others.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

An action for damages for personal injuries was brought in the Court of Common Pleas of Cuyahoga County, Ohio, by Mike Latsko against the National Carloading Corporation, which was organized under the laws of Delaware. On diversity of citizenship grounds, the action was removed to the United States District Court on petition of the defendant. By leave of that court, Latsko amended his petition so as to add two new defendants, namely The Erie Railroad Company, and the New York, Chicago & St. Louis Railroad Company (hereinafter often referred to as Nickel Plate). The three defendants filed, on different dates, separate motions for summary judgment. Two affidavits of Cunningham, Secretary of National, and an affidavit of MacMillan, office manager of that corporation, were filed in support of National's motion. The plaintiff, Latsko, filed as counter affidavits his own and two affidavits of his attorney.

Upon consideration of the pleadings and the affidavits, the District Judge entered orders for summary judgment in favor of National and Nickel Plate and dismissed plaintiff's action as to them. An order denying the motion of The Erie Railroad Company for summary judgment was entered, however; and Erie has appealed. The plaintiff, Latsko, has appealed from the dismissal of his complaint against National and Nickel Plate.

The plaintiff states in his amended petition that his action is brought against all three defendants under the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51 et seq. Considering together the material fact averments and eliminating mere conclusions of the pleader in the amended petition and supporting affidavits, the pertinent facts will be narrated.

National Carloading Corporation is a freight forwarder. Its business is to collect, consolidate, ship and distribute less than carload shipments of freight. It employs the services of various carriers by motor vehicle and rail, and pays regular tariff rates to such carriers. The corporation maintains consolidation and distributing stations for the collection and delivery of freight, including one at Cleveland, Ohio. It does not own, operate, lease, or maintain any railroad cars, engines, appliances, machinery, tracks, road beds, works, boats, wharves, or other railroad equipment. Its relation with railroads is that of ordinary consignor or shipper. National is a freight forwarder as defined in Part IV of the Interstate Commerce Act, 49 U.S.C.A. § 1001 et seq.; is subject to various state compensation Acts; and is an employer in good standing under the Ohio Workmen's Compensation Act. Ohio General Code Annotated section 1465-60 et seq. The various railroads, including Nickel Plate, which furnish switching services to National do so in the same manner as such services are rendered any industrial plant located on a side track. National does not control jointly with any railroad the movement of freight cars to or along such side tracks.

Plaintiff Latsko was employed by National at its Cleveland terminal. On the day of his injury, he was engaged in removing freight from cars in the yards and terminal of the defendant National and on the tracks and cars of the defendant Nickel Plate. While wheeling a two-wheel trucking apparatus loaded with approximately 400 to 500 pounds of freight, he was obliged to traverse a metal plate extending from the dock in the freight yard to a trailer; and, as he was crossing it, the metal plate slipped and caused him to be hurled to the ground below, seriously injuring him. Latsko, when injured, was in the exclusive employ of National, being hired and paid by it. That company alone had the right to control the details of his work; though, as he avers, he and other employees have at times opened and closed freight cars under the direction of National and *the crew* of Nickel Plate. He says further that he and other employees are required to clean up and clear away the debris, rubbish and accumulation on the railroad tracks in the yards, and in the road beds and the freight cars.

(I.) The motion of National Carloading Corporation for summary judgment was based upon two grounds: (1) that plaintiff cannot recover against it under the Federal Employers' Liability Act for the reason that the defendant *is not a common carrier by railroad;* and (2) that plaintiff cannot recover at common law against National because it is subject to and has complied with the Workmen's Compensation Law of Ohio. Ohio General Code Annotated, section 1465–60 et seq., supra. Upon the authority of Wells Fargo & Co. v. Taylor, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205, and Jones v. New York Central R. Co., 6 Cir., 182 F.2d 326, the District Court held that the National Carloading Corporation is not a carrier by railroad within the meaning of the Federal Employers' Liability Act. The motion of National for summary judgment was accordingly sustained. We think the ruling of the District Court was correct.

In Jones v. New York Central R. Co., 6 Cir., 182 F.2d 326, this court held that an express messenger for Railway Express Agency, Inc., who while on duty on an express car forming part of a railroad train sustained injuries when struck by an Express Agency truck as he was remounting the express car, was not an employee of the railroad and was not entitled to recover against it under the Federal Employers' Liability Act. The doctrine established in 1920 in Wells Fargo & Co. v. Taylor, 254 U.S. 175, 187, 188, 41 S.Ct. 93, 98, 65 L.Ed. 205, was regarded as controlling. It was pointed out that to treat the messenger of the Express Agency as an employee of a railroad company which did not employ him would be, in effect, to disregard the separate legal entities of the railroad company and the express company. There is no better reason for disregarding the separate legal entity of the forwarding company, the employer in this case, and that of the Nickel Plate Railroad.

The language of section 51 of the Federal Employers' Liability Act plainly applies only to common carriers by railroad and not to freight forwarding companies and express companies, which obviously are not railroads. The following is the definitive language of Mr. Justice Van Devanter in the Wells Fargo case: "In our opinion the words 'common carrier by railroad', as used in the act, mean one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad (see Southern Pacific Co. v. Jensen, 244 U.S. 205, 212–213, 37 S.Ct. 524, 61 L.Ed. 1086); by the obvious reference in the latter part of sections 3 and 4 to statutes requiring engines and cars to be equipped with automatic couplers, standard drawbars and other appliances intended to promote the safety of railroad employes (see San Antonio & Aransas Pass Ry. Co. v. Wagner, 241 U.S. 476, 484, 36 S.Ct. 626, 60 L.Ed. 1110); by the use of similar words in closely related acts which apply only to carriers operating railroads, (27 Stat. 531, c. 196 [45 U.S.C.A. §§ 1–7]; 35 Stat. 476, c. 225 [45 U.S.C.A. §§ 17–21]; 36 Stat. 350, c. 208 [45 U.S.C.A. §§ 38, 43]); and by the fact that similar words in the original Inter-

state Commerce Act had been construed as including carriers operating railroads but not express companies doing business as here shown. [Citing cases]." See also U. S. ex rel. Chicago, New York & Boston Refrigerator Co. v. Interstate Commerce Comm., 265 U.S. 292, 44 S.Ct. 558, 68 L.Ed. 1024, wherein the doctrine of the Wells Fargo case, supra, was applied to the conclusion that a car company whose business consists in leasing its refrigerator cars to railroads on a car-mile basis is not a carrier by railroad within the meaning of the Transportation Act of 1920.

As authorities in support of his contention that Nickel Plate is liable to him by virtue of the Federal Employers' Liability Act, Latsko stresses three decisions of this court: Cimorelli v. New York Cent. R. Co., 6 Cir., 148 F.2d 575; Pennsylvania R. Co. v. Roth, 6 Cir., 163 F.2d 161; and Pennsylvania R. Co. v. Barlion, 6 Cir., 172 F.2d 710. In each of these cases, the railroad company contracted with the United States Government to perform work, a part of which the railroad company employed another company to do. The railroad companies, respectively, retained control over the work in such manner as to prevent application of the independent-contractor doctrine. In the instant case, National was engaged in carrying on its business operations, which had not been delegated by it to any other company or instrumentality and over which it retained control. The three cases are, therefore, clearly distinguishable.

The Supreme Court has held that one who is not an employee of an interstate carrier but an independent contractor cannot recover, nor can his representative under the Federal Employers' Liability Act—even if he be killed or injured while engaged in services in interstate commerce. Chicago, Rock Island and Pacific Railway Company v. Bond, Administrator of Turner, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735.

For cases applying the principle that certain types of service corporations are not railroad companies within the meaning of different Acts of Congress applicable to railroad companies, see Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036; United States v. Fruit Growers' Express Company, 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739.

In a well-reasoned district court opinion, Gaulden v. Southern Pac. Co., N.D.Cal. 1948, 78 F.Supp. 651, it was held that a company engaged in renting refrigerator cars to railroads or shippers for transportation of perishable commodities, and in repairing and servicing such cars, was not a "common carrier by railroad" within the Federal Employers' Liability Act.

A three-judge district court for which Judge Augustus N. Hand wrote the opinion in Acme Fast Freight v. United States, S.D. N.Y., 30 F.Supp. 968, 969, held that forwarding companies engaged in collecting small shipments of goods, consolidating them and reshipping them in bulk, and paying regular rates to carriers and profiting by the spread between carload rates and less-than-carload rates were not "common carriers by motor vehicle" within the meaning of the Motor Carrier Act, 49 U.S.C.A. § 301 et seq. The analogy with the case at bar, in principle, is plain.

The Federal Employers' Liability Act was amended in 1939, but the description of an employer liable under the Act was not changed, nor was there any inclusion of either express companies or freight forwarders within the terms of the Act. We are, therefore, justified in concluding, as we did in Jones v. New York Cent. R. Co., supra, that "the Wells Fargo case had legislative approval." 182 F.2d 328.

The operations of National bring that company within the scope of the definition of a freight forwarder, as found in Part IV of the Interstate Commerce Act, whereof section 1002(a) (5) reads as follows: "The term 'freight forwarder' means any person which (otherwise than as a carrier subject to chapters 1, 8, or 12 of this title) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and dis-

tributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title."

It may be well to distinguish several authorities adduced by Latsko to support his argument that National is liable to him, by virtue of the Federal Employers' Liability Act. Railroad Retirement Board v. Duquesne Warehouse Co., 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192, held that a warehouse company wholly owned by a railroad company in the related circumstances is an "employer" within the meaning of the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., and the Railroad Unemployment Insurance Act of 1938, 45 U.S.C.A. § 351 et seq. Universal Carloading & Distributing Co. v. Pedrick, 2 Cir., 184 F.2d 64, held that a railroad-controlled freight hauling company engaged in loading and unloading cars and performing other services which could be performed by the railroads themselves and for which they could make a charge was an "employer" within the coverage of the Retirement Tax Act, even though controlled by the railroad, or by virtue of a trust indenture. The point is that the Acts involved in these two cases, by express provision, apply to employers defined as carriers performing any service in connection with the transportation of passengers or property, or to any company owned or controlled by such carriers; while in the Federal Employers' Liability Act an employer is defined as a common carrier by railroad, and such definition was not altered by the 1939 amendment of the Act. Kach v. Monessen Southwestern Ry. Co., 3 Cir., 151 F.2d 400, is not in point. There, the defendant admitted that it was a common carrier by railroad; and the issue for determination was whether it was engaged in interstate commerce. The court held that it was so engaged.

II. It seems clear that the plaintiff, Latsko, cannot maintain an action against Nickel Plate under the Federal Employers' Liability Act, inasmuch as he was employed by the National Carloading Corporation and not by the Nickel Plate Railroad. The Cimorelli, Roth, and Barlion cases have already been distinguished from the case at bar; and we are unable to spell out from the pleadings in this case the existence of an agency relationship such as would make Latsko—admittedly an employee of National—an employee of Nickel Plate also. Nor do we find, as contended by Latsko, that a genuine issue of fact not to be disposed of by summary judgment is presented by the pleadings and affidavits as to the liability of Nickel Plate.

The permissive use by National of Nickel Plate's instrumentalities for carrying on its forwarding business would not constitute Latsko an employee of Nickel Plate. Nor would the occasional directions given Latsko by a Nickel Plate crew during the progress of his work on its premises do so. The allegations of fact made by the plaintiff do not constitute a clear-cut averment that Latsko was employed by Nickel Plate. Such averment would be essential to the applicability of the Federal Employers' Liability Act insofar as Nickel Plate's liability to Latsko is concerned. See Jones v. New York Cent. R. Co., supra. In our view, the District Court properly granted the motion of the New York, Chicago & St. Louis Railroad Company (herein called Nickel Plate) for summary judgment.

III. The plaintiff made The Erie Railroad Company a defendant, for the reason that, concededly, it owns all the stock and assets of National Carloading Corporation; and it is urged that such stock ownership by Erie is merely a device by which it seeks to exempt itself from liability. Section 55 of Title 45 U.S.C.A., provides: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void; * * *." As pointed out by the District Judge, a genuine issue of material fact is presented by the pleadings as to whether Erie intended to avoid its liability under the Federal Employers' Liability Act, by acquiring all the stock of National and, there-

by enabling itself to control the operations of the latter company. Accordingly, the motion of The Erie Railroad Company for summary judgment was properly denied.

For the foregoing reasons, the order entered by the District Court on June 23, 1950, with respect to the several motions for summary judgment is, in all respects, affirmed.